OPINION
Appellant Kristina Young appeals a judgment of the Licking County Municipal Court convicting her of Operating a Motor Vehicle After Underage Consumption (R.C. 4511.19(B)(2)), Defective Muffler (R.C. 4513.22), Driving Left of Center (R.C. 4511.25), Drug Abuse (R.C. 2925.11), Possession of Drug Paraphernalia (R.C. 2925.14), and Underage Possession (R.C. 4301.632), upon a plea of no contest:
ASSIGNMENTS OF ERROR:
 I. THE TRAIL COURT ERRED IN NOT SUPPRESSING ALL EVIDENCE DUE TO THE UNLAWFUL STOP BASED ON INFORMATION, ALBEIT ERRONEOUS, THAT APPELLANT HAD NO VALID DRIVING PRIVILEGES.
 II. THE TRIAL COURT ERRED IN DENYING BRANCH 2, APPELLANT'S MOTION FILED JULY 3, 1997.
 III. THE TRIAL COURT ERRED IN DENYING BRANCHES 3, 4, 
5, APPELLANT'S MOTION FILED JULY 3, 1997.
 IV. THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF DEFECTIVE MUFFLER.
 V. THE TRIAL COURT ERRED IN DENYING BRANCH 7, APPELLANT'S MOTION FILED JULY 3, 1997.
 VI. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY PERMITTING APPELLEE TO GO BEYOND THE PROVISIONS OF O EVID R 104(D) DURING THE SUPPRESSION HEARING.
On June 16, 1997, Officer Blackledge of the Granville Police Department viewed a vehicle operated by appellant traveling in the west-bound turning lane of State Route 16. The officer noticed that the vehicle had a loud exhaust. The vehicle turned left onto Cherry Valley Road, traveling left of center and weaving in its lane as it made the left-hand turn. He further observed the vehicle travel left of center while moving down Cherry Valley Road. Officer Blackledge requested a validation check of the vehicle. The dispatcher reported to him that the owner of the vehicle's license was under suspension. He again noticed that the exhaust was extremely loud, and he could hear it with his windows up and his air conditioner on. After receiving the validation check concerning the license suspension of the vehicle's owner, they neared the village limit of Granville. He located a safe place to stop appellant's vehicle, about one-half mile from the village limit at the Roadway terminal. He turned on his overhead lights, pulled over appellant's vehicle, and approached the car.
Officer Blackledge asked appellant if she was the owner of the car, to which she responded affirmatively. He asked for her operator's license. He detected a faint odor of alcohol from inside the vehicle. Appellant indicated that her birthday was December 24, 1977, from which the officer concluded that she was underage to consume alcohol.
Officer Blackledge told appellant that BMV had reported to him that she had no driving privileges. Appellant maintained that there must be a mistake, as she did have driving privileges. The officer asked appellant to step from her car. He asked if she had anything in her pockets. She handed him some rolling papers. When the officer asked appellant what she used them for, appellant replied that she used them for marijuana joints.
Officer Blackledge read appellant her Miranda rights and placed her under arrest. He noticed some beer in the back of her car, which she claimed did not belong to her. He searched the vehicle for alcohol, at which time he found marijuana and screens used in smoking marijuana. Appellant was transported to the Granville Police Station, at which time the officer administered field sobriety tests and a breath test. Appellant tested .042 on the breath test, and refused to submit to a urine test. Appellant then indicated that she wanted to talk to an attorney. She was not questioned further.
Appellant moved to suppress all evidence obtained from the traffic stop. The court overruled the motion. A charge of Driving Under Suspension was dismissed after the prosecutor discovered that the BMV report concerning appellant's license suspension was incorrect. Appellant plead no contest, and was convicted of Underage Possession, Operating a Motor Vehicle After Underage Consumption, Possession of Drug Paraphernalia, Defective Muffler, Driving Left of Center, and Drug Abuse. She was fined $250, and sentenced to thirty days incarceration. Twenty days of the sentence were suspended, and she was placed on probation for two years. Her driving privileges were suspended for two years.
 I.
Appellant argues that the stop was unlawful, as it was based on erroneous information that she had no driving privileges.
A police officer may stop an automobile for investigation where the officer has an articulable and reasonable suspicion that the motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law. State vs. Chatton
(1984), 11 Ohio St.3d 59, 61, cert. denied, 469 U.S. 856, citingDelaware vs. Prouse (1979), 440 U.S. 648. Where an officer learns from a check of the vehicle's license plates that the operator's license of the owner of the vehicle is suspended, the officer may stop the vehicle, as the facts known to the officer, coupled with the rational inference that the owner of a vehicle is likely to be driving the vehicle, gives rise to a reasonable, articulable suspicion that the person driving the vehicle has a suspended license. State vs. Powell (February 24, 1993), Ashland App. No. CA-1021, unreported.
The fact that the information concerning appellant's driver's license later proved to be incorrect is irrelevant. Officer Blackledge received a report from the Bureau of Motor Vehicles, relayed through his dispatcher, that appellant's license was suspended. This gave him a reasonable, articulable suspicion to stop the vehicle for the purpose of checking appellant's driver's license.
In addition, the officer had witnessed appellant driving left of center, and observed that her exhaust was extremely loud. He, therefore, had witnessed two violations of the traffic laws, and was justified in stopping the vehicle.
The first Assignment of Error is overruled.
 II.
Appellant argues that the officer improperly stopped her outside of his jurisdiction, which ended at the Village of Granville's limits. She argues that all evidence from the stop must be suppressed.
The exclusionary rule only applies to violations of a constitutional nature, absent a legislative mandate requiring its application. State vs. Myers (1971), 26 Ohio St.2d 190. The exclusionary rule does not apply to the testimony of an arresting police officer regarding the actions of a defendant observed as a result of an extraterritorial warrantless arrest, even though the arrest is unauthorized under existing state law, if the arrest is based on probable cause that a crime was committed within the officer's jurisdiction, and if the officer was in hot pursuit of the defendant. Kettering vs. Hollen (1980), 64 Ohio St.2d 232.
Therefore, even if appellant is correct that the arrest was improper under State law, the exclusionary rule would not apply. Officer Blackledge observed two violations of State law, inside the Village limits of Granville. He received the report concerning the license suspension shortly before appellant drove past the Village limits. He pulled her over at his first safe opportunity, which was a mere half-mile outside the Village limits. Therefore, the exclusionary rule would not apply.
The second Assignment of Error is overruled.
 III.
Appellant argues that Officer Blackledge improperly searched her after the traffic stop.
As discussed in Assignment of Error I. above, there was sufficient reasonable suspicion of criminal activity to justify stopping appellant.
After stopping the vehicle, Officer Blackledge detected an odor of alcohol coming from the vehicle, and he was aware that appellant was under 21 years of age. This gave him a reasonable suspicion of criminal activity to justify further detention for investigation. In Branch 3 of her Motion to Suppress, appellant claimed that the officer unlawfully searched her and the vehicle. In her brief, appellant appears to argue that the search was unlawful because the officer lacked a reasonable, articulable suspicion to justify the initial stop. Because the stop was lawful, this contention is without merit.
Appellant also appears to argue in her brief that at the time the officer searched her and the vehicle, she had requested an attorney, thereby invoking her Miranda rights. She claims that any evidence seized thereafter was in violation of her Miranda
rights. As noted by the court, there was evidence through the testimony of Officer Blackledge that appellant made no statements, nor was she questioned, after she invoked her Miranda rights. There was evidence that when asked to empty her pockets, in lieu of a protective pat-down, appellant voluntarily handed the officer some rolling papers, and told him that she used them for rolling marijuana. At this point, he read her Miranda rights, and placed her under arrest. Although appellant testified that she first asked for an attorney at the stop scene, the trial court obviously chose to believe the testimony of Officer Blackledge.
The third Assignment of Error is overruled.
 IV.
Appellant argues that the State did not substantiate the Defective Muffler charge. She bases this on the officer's testimony at the suppression hearing that he did not look under appellant's car, nor did he look at the muffler.
R.C. 4513.22 provides that every motor vehicle with an internal combustion engine shall at all times be equipped with a muffler which is in good working order and in constant operation, to prevent excessive or unusual noise. Office Blackledge testified at the suppression hearing that he could hear the muffler, despite having his windows rolled up and the air conditioner in the police cruiser turned on. There is no requirement that the muffler be inspected. Appellant plead no contest, thereby admitting the truth of the facts as alleged in the complaint. Crim.R. 11(B)(2). Appellant cannot claim that the State did not have sufficient evidence to prove her guilt beyond a reasonable doubt. The evidence was sufficient to allow a finding of guilty from the plea of no contest.
The fourth Assignment of Error is overruled.
 V.
Appellant argues that the court erred in moving to suppress the BAC results, as the State failed to prove substantial compliance with OAC regulations concerning the test.
In her brief, appellant does not specifically argue as to which provision of the Ohio Administrative Code the State failed to prove compliance. She merely cites to the testimony of the officer on cross-examination, and claims that this evidence fails to demonstrate substantial compliance. Appellant has failed to demonstrate any error in the court's conclusion that the State demonstrated substantial compliance.
The fifth Assignment of Error is overruled.
 VI.
Appellant argues that the court abused its discretion by permitting the prosecutor to go beyond the provisions of Evid.R. 104(D) during cross-examination of appellant at the suppression hearing. She argues that the trial court permitted the prosecutor to question appellant as to whether she uses marijuana, contra to the evidence rule and her right to be free from self-incrimination.
Evid.R. 104(D) provides that the accused does not, by testifying upon a preliminary matter, subject himself to cross-examination as to other issues in the case.
Appellant testified that Officer Blackledge lied when he testified that she said she used the rolling papers for marijuana. She, therefore, opened the door to cross-examination regarding her use of marijuana and the use of the rolling papers which she handed to the officer. The trial court did not abuse its discretion in allowing this cross-examination.
The sixth Assignment of Error is overruled.
The judgment of the Licking County Municipal Court is affirmed.
By: Reader, J., Hoffman, P. J. and Wise, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Licking County Municipal Court is affirmed. Costs to appellant.